```
IN THE UNITED STATES DISTRICT COURT
  FOR THE SOUTHERN DISTRICT OF ALABAMA
            SOUTHERN DIVISION
```

RODERICK MOORE,                *
                               *
    Plaintiff,                 *
                               *
vs.                            *   CIVIL ACTION NO.12-00236-B
                               *
CAROLYN W. COLVIN,[1],         *
Commissioner of Social Security, *
                               *
    Defendant.                 *

### ORDER

Plaintiff Roderick Moore ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and 1381, *et seq*.  On May 30, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Federal Rule of Civil Procedure 73. (Doc. 21). Upon careful consideration of the administrative record and the arguments and briefs of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 20, 2009, and alleged that his disability commenced on August 12, 2009. (Tr. 147-55).[2] Plaintiff's application was denied (id. at 86-90), and he timely filed a Request for Hearing December 21, 2009. (Id. at 98). An administrative hearing was held before Administrative Law Judge David Murchison (hereinafter "ALJ") on April 20, 2011. Plaintiff and his attorney attended the administrative hearing, as did a vocational expert ("VE"). (Id. at 38-58). On June 17, 2011, the ALJ issued an unfavorable opinion finding that Plaintiff is not disabled. (Id. at 9-17). The Appeals Council denied Plaintiff's request for review on February 7, 2012; thus, the ALJ's decision dated June 17, 2011 became the final decision

---

[2] On January 3, 2002, Plaintiff was found disabled as of September 25, 2002, due to a mental impairment. In a decision dated March 16, 2009, an administrative law judge (ALJ) found that Plaintiff was no longer disabled as of January 1, 2008, see 20 C.F.R. § 404.15949(f)(8), noting evidence that Plaintiff had returned to work. (Tr. 73-83). That decision is not at issue here. See 20 C.F.R. § 404.955 (effect of ALJ denial).

of the Commissioner. (Id. at 1-3). Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

**Whether the ALJ erred in failing to specify what weight, if any, he gave to Plaintiff's treating physician?**

## III. Factual Background

Plaintiff was born on May 5, 1960, and was fifty years of age at the time of the administrative hearing. (Tr. 42, 147). He has a twelfth grade education and past work as a bumper inspector, detailer, shipping and receiving employee, and grocery store clerk. (Id. at 42, 171-75, 174). Plaintiff testified that he has not worked since 2002, and that his problems include seizure disorder and high blood pressure. (Id. at 46).

At the administrative hearing Plaintiff provided testimony concerning his seizure disorder. He testified that he has been receiving treatment for his seizures from physicians at Stanton Road Clinic since 2002. (Id. at 43-44). Plaintiff testified that he suffers a seizure every other day, and that he spent one night in the hospital in the past year due to a seizure episode

3

at his brother's house. (Id. at 48, 51). Plaintiff further testified that his medication helps however, it causes him to have headaches and feel drowsy and dizzy and, he has difficulty paying for it. (Id. at 43-45). With respect to his daily activities, Plaintiff testified that he sits in his room and on the porch, he watches television, he visits with his sister who lives across the street from him, and he rides with his brother. (Id. at 45-47)

**IV. Analysis**

**(1) Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Id.; Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

### B. Discussion

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R. §§ 404.1520, 416.920.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe
(Continued)

5

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 4, 2008, and that he has the severe impairments of seizure disorder and hypertension. (Tr. 11). The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range

---

impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

6

of work at all exertional levels with specified non-exertional limitations. (Id. at 12). The ALJ also found that Plaintiff cannot be exposed to dangerous heights or machinery or temperature extremes, cannot climb ladders, ropes or scaffolds, and cannot use automobile equipment. (Id.). The ALJ further found that Plaintiff is limited to understanding, remembering, and carrying out simple one and two step instructions and that he is expected to miss one day of work per month. (Id.). Utilizing the services of a VE, the ALJ determined that Plaintiff is not capable of performing his past relevant work. (Id. at 16). In addition, the ALJ found that considering Plaintiff's RFC and vocational factors such as age, education, and work experience, in conjunction with the VE's testimony, Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as a laundry folder, a dish washer, and a hand packager. (Id. at 16). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 17).

### 1. **Medical Evidence**

Plaintiff testified that he has been receiving treatment for his seizures from physicians at the Stanton Road Clinic since 2002. (Id. at 43-44). The relevant evidence of record reflects that on December 4, 2008, Dr. Mudassar Asghar, M.D., completed a seizure questionnaire concerning Plaintiff's seizure disorder. On the questionnaire, Dr. Asghar noted that Plaintiff

suffers from seizures "by clinical description only and have not been verified by testing." (Id. at 229). He also noted that in August of 2008, Plaintiff underwent EEG testing, both awake and drowsy, which produced normal results and showed no signs of seizure activity. (Id.). Dr. Asghar further noted that Plaintiff was diagnosed with complete partial seizures, and that his medication does not control his seizures. He indicated that he could not predict the length of time it takes Plaintiff to regain normal functioning following a seizure, nor could he predict the frequency; however, Plaintiff reported experiencing ten seizures over a three-month period. (Id.). Dr. Asghar observed that Plaintiff reported that he was non-compliant with his medications due to the side effects consisting of double vision and a spaced out feeling. (Id.). Dr. Asghar opined that these side effects would not prevent Plaintiff from sustaining normal concentration or pace in a work type setting. (Id.). Dr. Asghar recommended that Plaintiff undergo EMV monitoring to document any seizure activity because no seizure activity was recorded on his prior EEG. (Id.).

On March 26, 2009, Plaintiff had a follow-up visit with Dr. Asghar at Stanton Road Clinic. (Id. at 234). Dr. Asghar's notes indicate that Plaintiff missed his EMV appointment, which was scheduled to monitor any seizure activity. (Id.). Plaintiff reported that he did not know that the appointment was

8

scheduled. (Id.). Dr. Asghar's notes reflect that Plaintiff reported experiencing mild intermitted bilateral tremors and some gait difficulty; and during the same visit, He reported "I used to stumble a lot but now not as much." (Id.). Plaintiff also reported experiencing ten seizures since his December 2008 visit and that he suffers about one seizure per week, usually at night. (Id.). Dr. Asghar noted that while Plaintiff's Dilantin had been increased as a result of his reports of more seizures, there had been no decrease in Plaintiff's report of seizures. (Id.). In addition, Dr. Asghar noted that Plaintiff experienced better results on different medications; however, he reported difficulty purchasing those medications. (Id.). Dr. Asghar also discussed Plaintiff's headaches and blood pressure, which was 180/110, and switched his medication. (Id.).

Plaintiff returned to the Neurology Department at Stanton Road Clinic for a follow up visit on April 1, 2009. Plaintiff's exam was largely normal and no complaints were noted. (Id. at 232). Plaintiff's blood pressure was well controlled at this visit and he was instructed to continue taking his medication. (Id. at 232-33). Plaintiff returned on July 16, 2009, and reported that he was still having seizures and headaches. (Id. at 230). Plaintiff reported that his medications caused him to feel dizzy and have double vision, so he only took the medicine at night. (Id.). Plaintiff also reported that he still

9

experiences headaches about every two days, which Dr. Asghar noted was an improvement. (Id.). Dr. Asghar continued Plaintiff's medications "as is for now" until after Plaintiff's seizures could be verified by the EMV monitoring. (Id.).

In addition to Plaintiff's treatment records from Stanton Road Clinic, the record also contains treatment notes from South Alabama emergency room. Plaintiff was treated at the emergency room on June 15, 2010, with reports of a witnessed seizure. (Id. at 246). During the visit, Plaintiff reported that he was not taking his medications on account of his finances. (Id.). According to the treatment notes, Plaintiff appeared confused and intoxicated and smelled of alcohol. (Id. at 247). Plaintiff's blood work revealed high levels of alcohol (id. at 251, 245) and non-therapeutic levels of his seizure medication. (Id. at 249-54). Plaintiff was discharged and instructed to take his medication as directed and to follow up with Franklin Medical Clinic or the Board of Health. (Id. at 248). There are no records before the Court documenting a follow up visit.

Plaintiff was treated at the South Alabama emergency room on two other occasions, namely July 29, 2010 and August 21, 2010. Plaintiff reported an insect sting from working in the yard and a rash, respectively. (Id. at 237, 241). Plaintiff did not report any seizure activity during these two visits. (Id.).

After Plaintiff submitted his applications for social

10

security benefits, on May 24, 2011, the Agency referred Plaintiff to Dr. Illyas A. Shaikh, M.D., for a consultative neurological examination. (Id. at 259-62). During the evaluation, Plaintiff reported that he has been experiencing seizures since 2004. (Id. at 259). Plaintiff also reported that he suffers about twelve seizures per month and that his most recent seizure was the day before the evaluation on May 23, 2011. (Id.). He also reported that he was compliant with all medications and although his previous medications made him feel dizzy, his current medications were "not bad." (Id.).

Plaintiff's physical examination was largely normal except that his blood pressure was elevated to 183/116. (Id. at 260). Dr. Shaikh observed that Plaintiff was able to move all four extremities and his bilateral extremities were without edema. He had good fine motor skills and grip strength, he could stand on his heels and toes, and his gait was slow, but normal. (Id. at 261). Dr. Shaikh also completed a medical source statement that outlined Plaintiff's functional physical limitations. (Id. at 263-68).

### 2. Issue

**Whether the ALJ erred in failing to specify what weight, if any, he gave to Plaintiff's treating physician?**

In his brief, Plaintiff's sole assignment of error is that the ALJ failed to explain what weight, if any, he gave to

Plaintiff's treating physician, Dr. Asghar. (Doc. 13 at 1-4). Specifically, Plaintiff argues that although the ALJ fully outlined the findings of the seizure questionnaire completed by Dr. Asghar, "it is not clear from the language of the decision what weight, if any, the ALJ gave to the opinion." (Id. at 3-4). Further, Plaintiff contends that the Dr. Asghar's opinion is consistent with treatment notes and is entitled to controlling weight under 96-2p. (Id. at 4). In response, the Commissioner contends that "the ALJ examined the questionnaire and accurately set forth Dr. Asghar's limited findings." (Doc. 16 at 8). The Commissioner further contends that although Plaintiff argues that the ALJ erred by failing to give proper weight to the questionnaire, Plaintiff has not explained how the questionnaire, which does not contain any work-related restrictions, would assist Plaintiff in meeting his burden of proving his disability. Thus, any such error is harmless. (Id. at 9). Based on a careful review of the record, the Court finds that Plaintiff's argument is without merit.

Under the treating physician rule, the opinion of a treating physician must be given substantial weight unless "good cause" is demonstrated to the contrary. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (citations and internal quotations omitted). "Good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence

supported a contrary finding; or 3) the opinion was conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1340-41 (11th Cir. 2004); see also Lewis, 125 F.3d at 1439-1441; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).

As noted *supra*, Plaintiff contends that the ALJ erred in failing to cite what weight, if any, was given to Dr. Asghar's opinions as outlined in the seizure questionnaire. Based on a careful review of the record, the undersigned finds that while the ALJ did not expressly articulate the weight afforded the questionnaire; it is clear that the ALJ accorded great weight to Dr. Asghar's opinions set forth in the questionnaire as he found that Plaintiff's seizures constitute a severe impairment. Further, in establishing Plaintiff's RFC, the ALJ expressly found that due to the risk of seizure activity, Plaintiff was precluded from exposure to dangerous heights or dangerous machinery, climbing, and the operation of automobile equipment. (Id. at 15). The ALJ also found that "[d]ue to potential side effects from medications and headaches, the [plaintiff] is limited to understanding, remembering and carrying out simple one and two step instructions." (Id.).

Finally, it is noteworthy that Dr. Asghar's questionnaire did not contain any functional limitations. Thus, assuming *arguendo*, that the ALJ erred in not expressly stating the weight

13

accorded Dr. Asghar's questionnaire, the error is harmless because the questionnaire does not contain any functional limitations let alone limitations that are inconsistent with the RFC as determined by the ALJ. Accordingly, any error was harmless. See Wright v. Barnhart, 153 Fed. App'x. 678, 684 (11th cir. 2005) (unpublished opinion) (although the ALJ did not specifically state the weight he afforded a physician's opinions, error was harmless because the physicians did not directly conflict the ALJ's findings).

**V.     Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **25th** day of **September, 2013.**

/s/ SONJA F. BIVINS<br>**UNITED STATES MAGISTRATE JUDGE**